# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL C. SCHMIDT,            :  <br>             Plaintiff    :  <br>                            :   No. 1:09-CV-0323 <br>         v.                  :  <br>                            :   (Judge Jones) <br>JAMES P. CREEDON, CONNIE A.  :  <br>TENNIS, RICHARD S. SHAFFER  :   Electronically Filed Document <br>*and* GREGORY A. GREEN,       :  <br>             Defendants   :  | |

## DEFENDANTS' STATEMENT OF MATERIAL AND UNDISPUTED FACTS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED

The Defendants, through their counsel and pursuant to Local Rule 56.1, hereby submit that the following facts are material to this action and are not genuinely in dispute:

1. This is the second in a series of lawsuits filed by Plaintiff, Michael Schmidt ("Schmidt").

2. Schmidt filed a lawsuit on July 2, 2007 with this Court that was docketed at 4:07-CV-1190 and listed as defendants James P. Creedon, Connie A. Tennis, Richard A. Shaffer, and Gregory Green.

3. The lawsuit docketed at 4:07-CV-1190 alleged violations of the 1st and 14th Amendments surrounding Schmidt's suspension on July 18, 2006 and subsequent termination on March 15, 2007.

4.     Schmidt's prior lawsuit, 4:07-CV-1190 ended in summary judgment granted in part to the Defendants and denied in part on February 18, 2009.  See 4:07-CV-1190, Doc. 45.

5.     The Order of February 18, 2009 stated that "the Motion is GRANTED with regard to Plaintiff's Due Process claim insofar as it involves the events surrounding Plaintiff's termination, since this cause of action was not pleaded in the Complaint."  See 4:07-CV-1190, Doc. 45.

6.     The current action was commenced by the filing of a complaint on February 19, 2009.  Doc. 1.

7.     Following a motion for reconsideration, Defendants' Motion for Summary Judgment in the 4:07-CV-1190 action was granted in whole by Order of this Court on March 24, 2009.  See 4:07-CV-1190, Doc. 55.

**PARTIES**

8.     Schmidt is employed by the Commonwealth of Pennsylvania, Department of General Services as a Capitol Police Officer.  See Complaint at ¶ 3; Defendants' Answer at ¶ 3.

9.     Defendant Connie A. Tennis was, at all relevant times, the Chief of Labor Relations, Bureau of Human Resources for the Commonwealth of

Pennsylvania, Department of General Services. See Complaint at ¶ 4; Defendants' Answer at ¶ 4.

10. Defendant James P. Creedon was, at all relevant times, the Secretary of the Commonwealth of Pennsylvania, Department of General Services. See Complaint at ¶ 5; Defendants' Answer at ¶ 5.

11. Defendant Richard S. Shaffer was, at all relevant times, the Superintendent of the Commonwealth of Pennsylvania Department of General Services Capitol Police. See Complaint at ¶ 6; Defendants' Answer at ¶ 6.

12. Defendant Gregory A. Green was, at all relevant times, the Director of the Bureau of Human Resources in the Commonwealth of Pennsylvania, Department of General Services. See Complaint at ¶ 7; Defendants' Answer at ¶ 7.

13. Plaintiff, Michael Schmidt, gained employment with the Capitol Police in November of 2002 as a patrol officer. See Exhibit "A," Deposition of Michael C. Schmidt dated September 15, 2008 at pgs. 13-14.

## SUSPENSION

14. On July 18, 2006, Schmidt was suspended from his position as a patrol officer without pay, pending an investigation into his conduct. Specifically, his suspension letter stated that he "allegedly [was] involved in the entry of information into the 'METRO' system, which was intended to undermine the

administration and operation of the Capitol Police." See Exhibit "B," July 18, 2006 Notice of Suspension.

15. The METRO system is a police reporting network used by the Capitol Police. This system is also used and accessed by most police agencies in the Harrisburg area. See Exhibit "A" at pgs. 17-18.

16. On July 15, 2006 Schmidt was scheduled for a 7:00 a.m. to 3:00 p.m. shift stationed at Harristown, which covers the Attorney General's Office and the Rachel Carson Building. See Exhibit "A" at pgs. 19, 23.

17. In the locker room, before his shift began, Schmidt was approached by Officer Kenneth Shaffer. Shaffer asked Schmidt if there was a union representative because Shaffer was going to be served with some paperwork and needed a union rep. See Exhibit "A" at pgs. 18-20.

18. In response to Shaffer's request for a union representative, Schmidt documented in the METRO system that Shaffer made a complaint. The entry noted an accusation of harassment, obstruction of justice, and official oppression. See Exhibit "A" at pgs. 18, 20.

19. The complaint for which Shaffer had sought a union representative, and that Schmidt entered into METRO, was against three Capitol Police officials: Richard Shaffer, Superintendent; Robert Dillard, Deputy Superintendent; and

Robert J. Rapak, Special Investigator.  <u>See</u> Exhibit "C," Deposition of Gregory Green dated September 26, 2008, Exhibit "Green 2" at pg. 2; Exhibit "D," Deposition of Connie Tennis dated September 10, 2008 at pg. 20.

20. Because Schmidt was not stationed at a site with a METRO computer, Schmidt went to the IMCS, or dispatch center, to enter Shaffer's complaint.  <u>See</u> Exhibit "A" at pg. 21.

21. Only those Capitol Police Officers assigned to the IMCS, or dispatch center as their work or duty post are authorized to be there.  <u>See</u> Exhibit "E," Deposition of Richard Shaffer dated September 9, 2008 at pg. 21; Exhibit "F," Deposition of Randy Bistline dated September 26, 2008 at pg. 12.

22. Section 3.1.9(a) of the Capitol Police Duty Manual states that police officers shall not leave their assigned duty post or assignment during a tour of duty except when authorized by a platoon supervisor.  <u>See</u> Exhibit "A" at pg. 32.

23. On July 15, 2006, Schmidt's assigned duty post was Harristown. Schmidt went to the dispatch center to enter the complaint, which was not his assigned duty post.  Sergeant Bistline was the platoon supervisor that day. Schmidt did not seek or receive authorization from Bistline to go to the dispatch center.  <u>See</u> Exhibit "A" at pgs. 31-33; Exhibit "E" at pgs. 16-17; Exhibit "F" at pgs. 9-10.

24. Schmidt entered the dispatch center without authorization. In doing so, he was not at his assigned post. See Exhibit "F" at pg. 7.

25. Sergeant Randy Bistline was given instructions by Superintendent Shaffer to make changes to Schmidt's entry in METRO. Bistline followed his orders. See Exhibit "F" at pg. 18.

26. At the end of Schmidt's shift on July 15, 2006, he found out that his dispatch had been removed from METRO by Bistline. He confronted his supervisor, Sergeant Bistline, and questioned him about why Bistline had removed the dispatch. Schmidt then told Bistline that Bistline had "fucked up." See Exhibit "A" at pgs. 47-48; Exhibit "F" at pg. 19-20.

27. Section 3.1.2(d) of the Capitol Police duty manual says police officers shall be tactful and diplomatic in their performance of their duties, and shall refrain from argumentative combative behavior, insolent or profane language in interactions with the public and with each other. See Exhibit "A" at pg. 50.

28. Section 3.1.13(b) of the Capitol Police manual says that police officers shall promptly report via the chain of command, any information which comes to his/her attention and which leads to indicate that any other Officer or employee has violated any law, policy or procedure. See Exhibit "A" at pgs. 34-35.

29. The information Schmidt placed in the METRO system given by Shaffer accused officers or employees of the Capitol Police of violating the law. Schmidt did not believe it was his responsibility to report that complaint via his chain of command before he entered it. See Exhibit "A" at pg. 35.

30. The meeting was held with Superintendent Shaffer, Deputy Superintendent Dillard, Special Investigator Rapak, Connie Tennis, and Gregory Green in attendance to discuss the allegations of misconduct against Schmidt. See Exhibit "C" at pg. 7-8; Exhibit "D" at pg. 9.

31. Superintendent Shaffer asked Human Resources to handle the investigation into the allegations surrounding Mr. Schmidt because he, Dillard and Rapak were indicated as the "accused" in the complaint filed by Schmidt and Shaffer didn't feel it would be his position to be involved in the investigation. See Exhibit "E" at pg. 44.

32. The Department of General Services turned the investigation into Schmidt's conduct over to the Office of Inspector General, an independent and external agency to make sure a fair and impartial investigation was conducted. See Exhibit "C" at pg. 31; Exhibit "D" at pg. 11, 41.

33. Schmidt was suspended throughout the investigation, from July 18, 2006 until his termination in March of 2007. See Exhibit "A" at pgs. 23-24.

34.    On July 28, 2006, Schmidt grieved his suspension through his Union, FOP Lodge 85.  See Exhibit "A" at pg. 27; Exhibit "H," Grievance of Suspension dated July 28, 2006.

35.    Schmidt's grievance regarding his suspension went to arbitration in February of 2007.  Following a hearing and post-hearing briefs, the arbitrator awarded Schmidt full back-pay, seniority and benefits from July 18, 2006 through November 14, 2006.  See Exhibit "A" at pg. 28; Exhibit "I," Opinion and Award of Suspension Grievance dated April 18, 2007.

## INVESTIGATION INTO ALLEGED CONDUCT

36.    As part of the Office of Inspector General's investigation, they interviewed Schmidt on November 14, 2006.  See Exhibit "A" at pg. 31; Exhibit "C" at "Green 2" pg. 2.

37.    The Office of Inspector General completed their report on February 5, 2007.  See Exhibit "C" at "Green 2"; Exhibit "D" at pg. 46.

38.    The Office of Inspector General noted that Schmidt's statements lacked consistency and truthfulness.  See Exhibit "C" at "Green 2" pg. 14.

39.    The Office of Inspector General concluded that Schmidt attempted to use Officer Shaffer's incident to embarrass the Administration.  See Exhibit "C," "Green 2" at pg. 14.

40. The Office of Inspector General concluded that the lack of consistency and truthfulness in Schmidt's statements lends itself to question his credibility and his ability to effectively carry out the Commonwealth duties.  See Exhibit "C," "Green 2" at pg. 14.

## TERMINATION

41. On March 2, 2007, Schmidt was notified that a pre-disciplinary conference was to be held to address the charges against him.  The letter listed the charges as:

> Specifically, on July 15, 2006, you left your assigned duty post without permission, entered the IMCS area without authorization and entered information without authorization into the METRO system which was intended to undermine the administration and operation of the Capitol Police.  In addition, after learning that Sgt. Bistline removed the information from the METRO system, you became loud, argumentative and insubordinate towards Sgt. Bistline, used profanity and disrupted the workforce.

See Exhibit "J," Notice of Pre-disciplinary Conference dated March 2, 2007.

42. On March 9, 2007 the pre-disciplinary conference was held with Schmidt, his union attorney, the union representative, Connie Tennis and another female from Human Resources in attendance.  See Exhibit "A" at pg. 51; Exhibit "D" at pgs. 52-53.

9

43. Schmidt declined to provide any explanation for the allegations against him during the March 9, 2007 pre-disciplinary conference. See Exhibit "D" at pg. 14.

44. Upon receipt of the report from the Office of Inspector General, and after the pre-disciplinary conference with Schmidt, Mr. Green recommended that Schmidt be terminated from his employment with the Capitol Police. See Exhibit "C" at pg. 14.

45. On March 14, 2007, Schmidt was notified by letter that he was terminated from his employment with the Capitol Police effective March 15, 2007. See Exhibit "D" at pg. 44; Exhibit "K," Notice of Termination dated March 14, 2007.

46. Connie Tennis drafted the March 14, 2007 termination letter for Gregory Green's signature. See Exhibit "D" at pg. 49, 54.

47. Green signed the termination letter issued to Schmidt on behalf of Secretary James Creedon because only Secretary Creedon has the authority to terminate an employee or delegate that authority to someone else. See Exhibit "C" at pg. 18-19.

48. Green did not discuss the matter with Secretary Creedon at all. See Exhibit "C" at pg. 19; Exhibit "G," Deposition of James Creedon dated December 9, 2008 at pg. 8.

49. The Department of General Services' policy is any time there is a termination either the Bureau of Human Resources or the deputy responsible for that bureau consults with Secretary Creedon to make him aware. See Exhibit "G" at pg. 7.

50. Secretary Creedon was consulted before Schmidt's termination and he gave his approval based upon the facts, the discussion with the deputy secretaries, and the Inspector General's report. See Exhibit "G" at pg. 11.

51. The reasons given for Schmidt's termination in his termination letter were:

> Specifically, on July 15, 2006, you left your assigned duty post without permission, entered the IMCS area without authorization, and entered information without authorization into the METRO system which was intended to undermine the administration and operation of the Capitol Police. In addition, after learning that Sgt. Bistline removed the information from the METRO system, you became loud, argumentative and insubordinate towards Sgt. Bistline, used profanity and disrupted the workforce. These actions violated numerous provisions and procedures of the Capitol Police Duty Manual, which you are bound by and expected to follow.

See Exhibit "K."

52. The termination letter did not contain the specific provisions and procedures from the Capitol Police Duty Manual that Schmidt violated, but the specific reasons given were based upon those provisions and procedures. See Exhibit "D" at pgs. 60.

11

53. On March 22, 2007, Schmidt filed a grievance with his union alleging that he was terminated without just cause and that he was denied due process. See Exhibit "A" at pg. 41; Exhibit "L," Grievance No. 07-001 dated March 22, 2007.

54. Schmidt's grievance regarding his termination reached arbitration and following several hearings on the subject, and post-hearing briefs, the arbitrator for the grievance found for Schmidt and he was immediately reinstated to his former position; however, Schmidt was not awarded back-pay because the arbitrator found that Schmidt acted in such a way as "to embarrass the administration and to in some manner 'thumb his nose' at them." See Exhibit "M," Grievance Arbitration and Award dated March 26, 2008 at pg. 20.

55. Schmidt continues to believe that he did nothing wrong when it came to the violations outlined in his termination letter. See Exhibit "A" at pg. 54.

          **Respectfully submitted,**

          **THOMAS W. CORBETT, JR.**
          **Attorney General**

          By: *s/ M. Abbegael Giunta*
          **M. ABBEGAEL GIUNTA**

**Office of Attorney General**      **Deputy Attorney General**
**15th Floor, Strawberry Square**      **Attorney ID 94059**
**Harrisburg, PA 17120**

**Phone: (717) 787-1179**  **SUSAN J. FORNEY**
**Fax:    (717) 772-4526**  **Chief Deputy Attorney General**
**mgiunta@attorneygeneral.gov**  **Chief, Civil Litigation Section**

**Date:  December 1, 2009**  **Counsel for Defendants**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL C. SCHMIDT,** : | |
| Plaintiff : | |
| : | No. 1:09-CV-0323 |
| v. : | |
| : | Judge Jones |
| **JAMES P. CREEDON, CONNIE A.** : | |
| **TENNIS, RICHARD S. SHAFFER** : | **Electronically Filed Document** |
| *and* **GREGORY A. GREEN,** : | |
| Defendants : | |

### CERTIFICATE OF SERVICE

I, M. Abbegael Giunta, Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that on **December 1, 2009**, I caused to be served a true and correct copy of the foregoing document titled **Defendants' Statement of Material and Undisputed Facts in Support of Motion for Summary Judgment** to the following:

### VIA ELECTRONIC FILING

**Nathan C. Pringle, Jr., Esquire**
**2300 Vartan Way**
**2nd Floor**
**Harrisburg, PA  17110**
**pringlelaw@comcast.net**
*Counsel for Plaintiff*

                                *s/ M. Abbegael Giunta*
                                **M. ABBEGAEL GIUNTA**
                                Deputy Attorney General