**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHAEL C. SCHMIDT, | : | 09-cv-323 |
| | : | |
| Plaintiff, | : | Hon. John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| JAMES P. CREEDON, CONNIE A. | : | |
| TENNIS, RICHARD S. SHAFFER, | : | |
| and GREGORY A. GREEN, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

**January 25, 2010**

## I.     INTRODUCTION

Before the Court in this civil rights action is Defendants James Creedon

("Creedon"), Connie Tennis ("Tennis"), Richard Shaffer ("Shaffer"), and Gregory

Green's ("Green") (collectively, "Defendants") Motion for Summary Judgment

("the Motion").  (Doc. 11).  For the reasons articulated in this Memorandum, the

Court will grant the Motion.  An appropriate Order dismissing the action shall

enter.

## II.    PROCEDURAL HISTORY

This is the second in a series of lawsuits[1] filed by Plaintiff Michael Schmidt

("Plaintiff" or "Schmidt").  Plaintiff initiated the present action by filing a

Complaint on February 19, 2009, seeking damages pursuant to the Civil Rights Act

of 1871, 42 U.S.C. § 1983.  Plaintiff claims that Defendants violated his

Fourteenth Amendment procedural due process rights when they terminated his

employment.  Defendants filed the instant Motion for Summary Judgment,

Defendants' Statement of Material and Undisputed Facts, and brief in support of

the Motion on December 1, 2009.  (Docs. 11, 12, 13).  Plaintiff filed a brief in

opposition to the Motion on December 15, 2009.  (Doc. 14).  Defendants elected

not to reply, and, therefore, this matter is ripe for disposition.

## III.  STANDARD OF REVIEW

Summary judgment is appropriate if the record establishes "that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as

a matter of law."  Fed. R. Civ. P. 56(c).  Initially, the moving party bears the

burden of demonstrating the absence of a genuine issue of material fact.  *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant meets this burden by

pointing to an absence of evidence supporting an essential element as to which the

---

[1]Plaintiff filed a previous action asserting claims against all Defendants on July 2, 2007. Dkt. 4:07-cv-1190.  The case was dismissed and closed via this Court's grant of summary judgment.  This prior action will be discussed in more detail below.

non-moving party will bear the burden of proof at trial. *Id.* at 325. Once the

moving party meets its burden, the burden then shifts to the non-moving party to

show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). An issue is

"genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find

for the non-moving party, and a factual dispute is "material" only if it might affect

the outcome of the action under the governing law. *Anderson v. Liberty Lobby,*

*Inc*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely

on allegations of denials in its own pleadings; rather, its response must ... set out

specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The

non-moving party "cannot rely on unsupported allegations, but must go beyond

pleadings and provide some evidence that would show that there exists a genuine

issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000).

Arguments made in briefs "are not evidence and cannot by themselves create a

factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent.*

*Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985).

However, the facts and all reasonable inferences drawn therefrom must be viewed

in the light most favorable to the non- moving party. *P.N. v. Clementon Bd. of*

*Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment." *Anderson*, 477 U.S. at 247-48.

## IV. FACTUAL BACKGROUND

The following facts and inferences are derived from either the Plaintiff's Complaint (Doc. 1) or the Defendants' Statement of Undisputed Facts (Doc. 12) and are viewed in the light most favorable to the Plaintiff. If a fact is in dispute, it shall be indicated as such. Otherwise, the facts as detailed are undisputed on the record.

### A. Schmidt's Suspension and Termination

Plaintiff is employed by the Commonwealth of Pennsylvania, Department of General Services, Capitol Police ("Capitol Police") as an Officer. (Doc. 1 ¶ 3). Defendant Tennis was, at all relevant times, the Chief of Labor Relations, Bureau of Human Resources for the Commonwealth of Pennsylvania, Department of General Services. (Doc. 1 ¶ 4). Defendant Creedon was, at all relevant times, the

4

Secretary of the Commonwealth of Pennsylvania, Department of General Services.

(Doc. 1 ¶ 5). Defendant Shaffer was, at all relevant times, the Superintendent of

the Capitol Police. (Doc. 1 ¶ 6). Defendant Green was, at all relevant times, the

Director of the Bureau of Human Resources in the Commonwealth of

Pennsylvania, Department of General Services. (Doc. 1 ¶ 7).

Plaintiff gained employment with the Capitol Police in November of 2002.

(Doc. 12 ¶ 13). On July 15, 2006, Schmidt was approached by another officer

before his shift began and asked if there was a union representative. (Doc. 12 ¶ 17).

In response, Plaintiff documented into the METRO[2] reporting system that the

officer made a complaint.[3] (Doc. 12 ¶ 18). Plaintiff's entry noted accusations of

harassment, obstruction of justice, and official oppression, against three Capitol

Police officials: Defendant Shaffer, Deputy Superintendent Robert Dillard, and

---

[2]The METRO system is a reporting network used by the Capitol Police whereby computers are stationed at various sites within the city. The METRO system is accessible by the Capitol Police through computers placed at various locations throughout the Capitol Complex.

[3]Plaintiff disputes the chronology as detailed by the Defendant. (Doc. 14-2 ¶ 18). Plaintiff asserts:

> Schmidt was approached by Kenneth Shaffer before the start of [Schmidt's shift]. Shaffer knew that he was being served with paperwork and wanted a union representative. Schmidt identified John Bruno as a union representative, who was ending his shift and was at roll call. Schmidt recommended that Shaffer talk to Bruno when Bruno's shift ended ... Schmidt later documented the complaint filed by Bruno (for Shaffer).

(*Id.*). Though Plaintiff's assertion clarifies the actual progression of events, the facts disputed are immaterial to our determination.

Special Investigator Robert J. Rapak.[4]  (Doc. 12 ¶ 19).  Schmidt was stationed at an

area that did not have a METRO computer, and therefore he went, without

permission, to the dispatch center to enter the complaint.[5]  (Doc. 12 ¶ 20).

Defendant Shaffer instructed Plaintiff's supervisor, Sergeant Randy Bistline, to

remove the entry.  (Doc. 12 ¶ 25).  When Schmidt found out about the removal he

confronted, and apparently swore at, Sergeant Bistline.  (Doc. 12 ¶ 26).

On July 18, 2006, Plaintiff was suspended without pay from his position

pending an investigation into the above-mentioned conduct.  (Doc. 12 ¶ 14).

Specifically, Plaintiff's suspension letter stated that Plaintiff "allegedly [was]

involved in the entry of information into the 'METRO' system, which was

intended to undermine the administration and operation of the Capitol Police."

(Doc. 12 ¶ 14).

Defendant Shaffer requested that Human Resources handle the investigation

into the allegations regarding Schmidt.  (Doc. 12 ¶ 31).  The Department of

_____

[4]Plaintiff disputes Defendants' assertion as found in the statement of material facts: "The complaint for which Shaffer had sought a union representative, and that Schmidt entered into METRO, was against three Capitol Police officials. . . ."  (Doc. 12 ¶ 19).  Plaintiff notes "Shaffer sought a union representative to attend the meeting, at which he anticipated receiving paperwork, not to file a complaint."  (Doc. 14-2 ¶ 19).  Plaintiff apparently does not dispute that the complaint he filed in the METRO system made the above-named accusations.  (*See* Doc. 12 ¶ 29 (asserting "The information Schmidt placed in the METRO system given by Shaffer accused officers of employees of the Capitol Police of violating the law," and undisputed by Plaintiff)).

[5]Only Capitol Police Officers assigned to the dispatch center are authorized to be at that location.

General Services then turned the investigation over to the Office of the Inspector

General. The Office of the Inspector General ("OIG") interviewed Schmidt on

November 14, 2006. (Doc. 12 ¶ 36). The OIG completed its report on February 5,

2007, noting that Schmidt's statements "lacked consistency and truthfulness" and

concluding that "Schmidt attempted to use Officer Shaffer's incident to embarrass

the Administration." (Doc. 12 ¶¶ 36-38).

Plaintiff was suspended from his position during the investigation period,

from July 18, 2006 until his termination on March 15, 2007. (Doc. 12 ¶ 33). On

July 28, 2006, Plaintiff grieved his suspension through his Union. (Doc. 12 ¶ 34).

That grievance went to arbitration in February 2007, and Schmidt was awarded full

back-pay, seniority, and benefits from July 18, 2006 through November 14, 2006.

(Doc. 12 ¶¶ 34-36).

Plaintiff was notified that a pre-disciplinary conference would be held to

address the charges against him via a letter from Defendant Tennis on March 2,

2007. (Doc. 12 ¶ 41). Specifically, the charges were that

> on July 15, 2006, you left your assigned duty post without permission,
> entered the IMCS area without authorization, and entered information
> without authorization into the METRO system which was intended to
> undermine the administration and operation of the Capitol Police. In
> addition ... you became loud, argumentative, and insubordinate towards
> Sgt. Bistline.

(Doc. 12 ¶ 41). The conference was held on March 9, 2007, with Schmidt, his

union attorney, the union representative, Defendant Tennis, and another individual

from Human Resources in attendance. (Doc. 12 ¶ 32). Schmidt asserts that he

"was never told which rules he was accused of violating" and therefore declined to

provide explanation regarding the allegations against him. (Doc. 14-2 ¶ 43; Doc.

12. ¶ 43).

With the investigation report from the OIG in hand, and after the pre-

disciplinary conference, Defendant Green recommended that Schmidt be

terminated from his position. (Doc. 12 ¶ 44). Plaintiff was notified of his

termination via a letter drafted by Defendant Tennis and signed by Defendant

Green on behalf of Defendant Creedon.[6] (Doc. 12 ¶¶ 45-46). As aforestated,

Schmidt's termination became effective on March 15, 2007.

On March 22, 2007, Schmidt grieved his termination. (Doc. 53). When the

grievance reached arbitration, Schmidt was immediately reinstated to his position.

(Doc. 12 ¶ 54). Schmidt was not awarded back-pay, however, because the

arbitrator found that he "acted in such a way as to 'embarrass the administration

and to in some manner thumb his nose at them.'" (Doc. 12 ¶ 54). To date, Schmidt

---

[6]Creedon was consulted before Schmidt's termination and gave his approval, but Green
did not discuss Schmidt's termination prior to signing the letter. (Doc. 12 ¶¶ 47-49).

is still employed with the Capitol Police.  He seeks in damages compensation for all injuries, back pay, interest, punitive damages, in an amount in excess of $250,000 exclusive of interests, costs, and counsel fees. (Doc. 1).

B.    **Schmidt's Prior Complaint**

Schmidt filed his first Complaint with this Court on July 7, 2007.  (Dkt. 4:07-cv-1109, Doc. 1).  Smith alleged in that complaint that the same Defendants denied him due process pursuant to the Fourteenth Amendment when they suspended him without pay pending investigation and subsequently terminated him in retaliation for grieving that suspension in violation of his First and Fourteenth Amendment rights.  (*See id.*).  The underlying facts and allegations were nearly identical to those found in this action, although in the prior action Plaintiff did not assert that he was denied procedural due process regarding his termination until briefing of Defendants' Motion for Summary Judgment.  (*See* Dkt. 4:07-cv-1190, Doc. 40).

Defendants filed a Motion for Summary Judgment in the prior action on December 1, 2008.  (Dkt. 4:07-cv-1190, Doc. 31).  On February 18, 2009, this Court issued a Memorandum and Order granting in part and denying in part Defendants' Motion.  (Dkt. 4:07-cv-1190, Doc. 45).  Specifically, we granted Defendants' Motion with respect to Plaintiff's § 1985 claims, his procedural due

process claim relating to his termination, and Plaintiff's retaliation claim. (*Id.*).

We also granted Defendants' Motion relating to Defendant Shaffer, and dismissed

Plaintiff's Due Process claims against him. (*Id.*). Finally, Defendants Motion was

denied with regard to the remaining Due Process claims against the other

Defendants. (*Id.*) After a Motion for Reconsideration, filed by the Defendants

February 27, 2009, we revisited our previous order and fully granted Defendants'

Motion, dismissing all Defendants and closing the case. (Doc. 55).

## V.   DISCUSSION

Defendants allege the present Motion should be granted because Plaintiff

has not proven evidence to support a violation of his constitutional rights pursuant

to 42 U.S.C. § 1983. Specifically, Defendants claim (1) Smith cannot prove that

Shaffer had any part in the alleged denial of due process; (2) Plaintiff's claims are

barred by the doctrine of res judicata; and (3) Plaintiff was not denied due process

when he was terminated from the Capitol Police. (Doc. 13 pp. 5-7).

### A.   Defendant Shaffer

Defendants maintain that Plaintiff cannot meet the causation element of §

1983 as to Defendant Shaffer and therefore all claims against him must be

dismissed as a matter of law. (Doc. 13 p. 5). In support of that argument,

Defendants highlight that, after handing the investigation over to Human

Resources, Shaffer had no involvement in the matter. (*Id.*). Further, Defendants

note that only Defendant Creedon or a delegate had authority to terminate Plaintiff,

Defendant Shaffer did not have that authority. (*Id.*). Finally, "Shaffer had no part

in interviewing, or notifying Schmidt of the allegations against him and ultimately,

his termination." (*Id.*). Therefore, Defendants assert that Shaffer must be

dismissed because of his lack of involvement.

Plaintiff responds that "Section 1983 'should be read against the background

of tort liability that makes a man responsible for the natural consequences of his

actions.'" (Doc. 14 p. 2 (quoting *Monroe v. Pape*, 365 U.S. 167, 187 (1961)).

Schmidt asserts that because Shaffer directed a subordinate to conduct the initial

investigation that led to Plaintiff's suspension, he was personally involved with

Plaintiff's subsequent termination eight months later. (*Id.*). Plaintiff also asserts

that Defendant Shaffer "induced all other Defendants, to act without full

knowledge of the material facts, guaranteeing the Plaintiff's deprivation of due

process." (*Id.*).

When asserting a § 1983 claim, a plaintiff must show that the alleged

misconduct was committed by a person acting under color of state law and that the

Plaintiff was, as a result, deprived of rights or privileges secured by the

Constitution or federal law. *Daniels v. Willliams*, 474 U.S. 327, 330-31 (1986).

The Court disagrees with Plaintiff's tenuous characterization of Defendant

Shaffer's involvement in Schmidt's termination. We do not accept that Defendant

Shaffer played any appreciable role in Plaintiff's *suspension*. Moreover, that issue

was previously litigated and disposed of in the prior action. Further, Defendant

Shaffer did not have a role in the investigation that resulted in Plaintiff's

*termination*. In fact, Defendant Shaffer handed the matter over to Human

Resources because he did not believe his involvement would be appropriate. (*See*

Doc. 15-5, Deposition of Richard Shaffer, p. 44). Because Shaffer turned the

matter over, the eventual investigation was conducted by an independent and

external agency. Plaintiff has not alleged, and apparently can not allege, that

Defendant Shaffer was involved in the circumstances bearing upon the decision to

terminate him. Therefore, the Court will dismiss Plaintiff's § 1983 claims asserted

against Defendant Shaffer.

**B.    Res Judicata**

Defendants assert that Plaintiff's claims are barred by the doctrine of res

judicata. In support, Defendants highlight that Plaintiff's prior lawsuit "named the

same set of defendants and encompassed the same set of facts." (Doc. 13 p. 6).

Although Plaintiff did not plead a violation of due process regarding his

termination in the prior complaint,[7] he did raise that argument in a brief in

opposition to Defendants' Motion for Summary Judgment in that action. (*See* Dkt.

4:7-cv-1190, Doc. 55 pp. 11-12).[8] We dismissed Plaintiff's due process claim

regarding his termination, noting:

> Federal Rule of Civil Procedure 8(a) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2000) [internal quotation omitted]. Since Plaintiff provides no notice whatsoever in his Complaint that his due process claim encompasses the events surrounding his termination, this iteration of his claim will be dismissed, and the instant Motion will be granted to the extent that Plaintiff seeks redress for his termination [under the Due Process Clause].

(Dkt. 4:07-cv-1190, Doc. 45 p. 10 N.13). Defendants maintain that "not only

could Schmidt have properly plead and litigated this claim in his prior action, but

he did, to some extent, actually litigate it. (Doc. 13 p. 7). Further, Defendants

---

[7]Plaintiff only alleged a violation of due process with respect to his suspension, not termination. (*See* Dkt. 4:o7-cv-1190, Doc. 1).

[8] Schmidt asserted:

The Defendants continued their practice of denying the Plaintiff due process when the decision was made to discharge him ... At the [pre-disciplinary] meeting charges were vaguely asserted, but the specific rule violations the Plaintiff was alleged to have committed were not specified ... Tennis did not bother to review the specific alleged rule violations, and did not know what specific rules the Plaintiff was alleged to have committed. Accordingly, the Plaintiff was not given an opportunity to defend himself against the charges. . . .

(Dkt. 4:07-cv-1190, Doc. 55 pp. 11-12).

assert that our dismissal of the prior claim was a final judgment, and note that the entire prior action was dismissed by final judgment. (*Id.*).

Plaintiff responds that he attempted to present the claim with respect to his discharge in the prior action. Because this Court "specifically held that the Plaintiff never presented a Section 1983 claim," Plaintiff maintains that two elements of res judicata are missing: a final judgment *on the merits* and identity of cause of action. (Doc. 14 p. 4). Therefore, Plaintiff asserts that his claim cannot be barred by the doctrine of res judicata.

"Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). As Plaintiff aptly notes, preclusion applies if "(1) the issue decided in the prior adjudication was identical with the one presented in the later action, (2) there was a final judgment on the merits, (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication, and (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action." *Dici v. Pennsylvania*, 91 F.3d 542, 548 (3d Cir. 1996) (citing *Shaffer v. Smith*, 543 Pa. 526, 673 A.2d 872, 874 (Pa. 1996)). There is no doubt that Schmidt was the party to the prior adjudication and that the issue with which we are currently

presented is identical to the issue that was raised in the prior action (though it was

not pleaded in the prior Complaint).[9]  Therefore, we must only address whether

Plaintiff's due process claim relating to his discharge was subject to a final

judgment on the merits and whether Plaintiff had a full and fair opportunity to

litigate the issue.

It is evident that Plaintiff's assertion that he was without process was not

adjudicated on its merits in the prior action.  As noted, Plaintiff first raised the

discharge claim in response to the Motion for Summary Judgment.  Instead of

deciding that claim on its merits, we dismissed it because Plaintiff provided no

notice, let alone fair notice, to the Defendants that his procedural due process claim

encompassed the events surrounding his *termination* as well as his suspension.

The extent to which we addressed Plaintiff's discharge claim further indicates that

it was not, in fact, decided on its merits.  We noted that Plaintiff raised that claim

in his brief in opposition and disposed of it in a footnote.  Had the Court intended

to finally adjudicate Plaintiff's due process claim related to his discharge, the legal

analysis would have been adequately explained in the accompanying Memorandum

rather than relegated to a brief discussion in a footnote outlining the manner to

_____

[9]The prior lawsuit named the same defendants and encompassed the same set of facts.
Further, the assertions regarding due process are the same as those found in this action.

appropriately plead a claim. Further, because of the manner in which the claim was raised and subsequently dismissed, Plaintiff did not have a full and fair opportunity to litigate the issue. Therefore, because Plaintiff did not have a full opportunity to litigate an issue that was not even adjudicated on its merits, Plaintiff's claim at bar is not precluded by the doctrine of res judicata.

## C.     Procedural Due Process

Finally, and in the alternative, Defendants maintain that Plaintiff was not denied due process at all, and therefore the action should be dismissed on that basis. Defendants concede that Schmidt did have a property interest in his continued employment. (Doc. 13 p. 7). They assert, however, that he was provided with adequate process. (Doc. 13 p. 8). They note that "Schmidt was provided both notice, and a hearing through a pre-disciplinary conference held on March 9, 2007 in which he was notified of the charges and given opportunity to respond to them." (Doc. 13 p. 8). Defendants claim that the termination letter sent to Schmidt on March 14, 2007 provided him with further notice. (Doc. 13 p. 8). Finally, Defendants note that Plaintiff availed himself of post-deprivation procedures when he grieved his termination and then pursued arbitration after that grievance was denied. (Doc. 13 p. 10).

Plaintiff does not dispute that he was provided with notice and a hearing;

rather, he disputes the *adequacy* of the process he was given. Plaintiff asserts that

"[a]t the meeting charges were vaguely asserted, but the specific rule violations the

Plaintiff was alleged to have committed were not specified." (Doc. 14 p. 6).

Plaintiff argues that he did not have sufficient knowledge of the rule he was

violating, and asserts that "[knowing the specific rule means knowing the elements

of the rule, and the exceptions of the rule, among other things" is required, at a

minimum, to sufficiently provide notice and a meaningful opportunity to respond.

(Doc. 14 p. 8). Plaintiff also maintains that his post-deprivation arbitration process

was insufficient under the Constitution. (Doc. 14 p. 8).

The Fourteenth Amendment to the U.S. Constitution protects citizens against

state deprivation of life, liberty, or property without the due process of law. *See*

U.S. Const. amend. XIV, § 1. Analysis of a Fourteenth Amendment due process

claim involves two questions: (1) whether the interest asserted by the Plaintiff is

encompassed under the Fourteenth Amendment's protection of life, liberty, or

property; and (2) whether the procedures applied adequately provided the plaintiff

with due process of law. *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). As a

civil-service employee, Plaintiff could not be suspended or terminated but for good

cause. 71 Penn. Stat. § 741.807. Although an individual does not necessarily have

a property interest in continued employment, a "for-cause" termination provision

17

can establish a protected property interest. *See Bd. Of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972); *Linan-Faye Const. Co., Inc. V. Hous. Auth. of Camden*, 49 F.3d 915, 932 (1995). As aforestated, Defendants concede that Plaintiff had a protected property interest in his continued employment with the Capitol Police. Therefore, we need only analyze whether Plaintiff was afforded adequate process surrounding his termination.

"Due process is flexible and calls for such procedural protections as the particular situation demands." *Matthews v. Eldridge*, 424 U.S. 319, 334 (1976). The Third Circuit has held that, "[a]t a minimum, due process requires notice and a hearing." *Wilson v. MVM, Inc.*, 475 F.3d 166, 178 (3d Cir. 2007). The appropriate timing for notice and hearing and the extent and intensity required for the hearing depend on three interests:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Matthews v. Eldridge*, 424 U.S. 319, 335 (1976).

Plaintiff was provided with adequate process before he was discharged from his position. First, he was provided with sufficient notice. Beyond being placed on notice concerning the allegations against him by the date of his suspension on

18

July 18, 2006, he was given an opportunity to challenge the charges through his

first grievance and the resulting arbitration procedure. Further, on March 2, 2007,

Plaintiff was provided with notice of a pre-disciplinary hearing to be held on

March 9, 2007. Though the letter providing notice did not cite the specific rule

provisions that he was accused of violating, it did explicitly delineate the

investigation and the charges against him.[10] Schmidt attended the pre-disciplinary

conference, was given the opportunity to speak and address the allegations against

him, and refused to do so. The charges against Schmidt were communicated again

in his final termination letter. Finally, after his termination, Plaintiff again filed a

grievance and participated in arbitration regarding his discharge. We do not accept

that the failure to articulate the specific provisions Schmidt was alleged to have

violated renders inadequate all of the notice made to Plaintiff and procedures

---

[10]The letter states, *inter alia*:

> Specifically, on July 15, 2006, you left your assigned duty post without permission, entered the IMCS area without authorization, and entered information without authorization into the METRO system which was intended to undermine the administration and operation of the Capitol Police. In addition, after learning that Sgt. Bistline removed the information from the METRO system, you became loud, argumentative, and insubordinate towards Sgt. Bistline, used profanity and disrupted the workforce.

(Doc. 12-6). The letter further explains that "the purpose of the conference is to present you with an opportunity to discuss the allegations and to respond in detail to the charges above. At the conference, you will be requested to provide your account of the incidents being investigation." (*Id.*).

employed.  Indeed, the March 2, 2007 letter Schmidt received amply warned him that he was being subject to discipline for:  (1) leaving his post; (2) entering data without authorization; and (3) acting in an insubordinate manner.  These allegations were clearly and succinctly stated, could not possibly have surprised Schmidt nor been beyond his ken, and placed him on notice concerning what he had to defend himself against, "specific provisions" or not.  Accordingly, as there is no issue as to any material fact regarding Plaintiff's claim, we will dismiss the same.  As there are no other outstanding claims the case shall be closed.

## VI.    CONCLUSION

For the reasons articulated above, we will grant Defendants' Motion for Summary Judgment, dismiss the Complaint, and close the case.  An appropriate Order shall enter.